Hartford,
June, 1837.

Nancy Jackson
*v.*
Bulloch.

</div>

12  69
58  383
58  424

----

### LOOMIS *against* MARSHALL and others.

The test of partnership is a community of profit; but to constitute such community of profit, the party must have a specific interest in the profits themselves, as profits, in contradistinction to a stipulated portion of the profits as a compensation for his services.

Therefore, where *A*, residing at a distance from a factory of cloths, occupied by *B*, entered into an agreement with *B*, by which *A* was to furnish a full

supply of wool for the factory, for two years ; *B* was to manufacture such wool into cloths, in a good and workman-like manner, and to devote the entire use of the factory to that purpose, for such term ; and the net proceeds of the cloths, after deducting incidental expenses and the charges of sale, were to be divided, so that *A* should have fifty-five *per cent.* and *B* forty-five *per cent.* thereof; in the manufacture of satinets from such wool, *A* was to pay fifty-five *per cent.* and *B* forty-five *per cent.* of the cost of the warp; the expense of insurance effected on wool or cloths was to be borne by *A* and *B*, in the same ratio as their interest was in the final division of the avails of the cloths; and in case of the destruction of any wool or cloth by fire, the amount to be received from the insurers was to be divided between *A* and *B* according to the loss sustained by each ; in an action brought by *C* for work and labour done in the factory, against *A* and *B* as partners, it was held, that *B* had no other interest in the profits, than a compensation for his labour and materials, by a percentage on the avails of the cloths; and consequently, that *A* and *B* were not liable as partners. [The Chief Justice dissenting.]

THIS was an action of *assumpsit* for work and labour; to which the defendants pleaded the general issue.

The cause was tried at *Litchfield, August* term, 1836, before *Williams*, Ch. J.

The plaintiff claimed to recover of the defendants as partners ; and to prove the partnership, he exhibited in evidence the following agreement: " Articles of agreement by and between *Seth Marshall, Theron Rockwell, George O. Jarvis* and *Giles H. Bass*, on the one part, and *Alfred French* and *Macpherson Hubbell*, on the other part, *witness*, That the said *Marshall, Rockwell, Jarvis* and *Bass* agree, on their part, to furnish so much wool of a good quality, for the term of two years from the 1st day of *October* next, also from this date to said 1st day of *October* next, as shall be a full supply for the factory now occupied by said *French* and *Hubbell*, and owned by *Rockwell* & *Hinsdale.* The said *French* and *Hubbell*, on their part, agree to devote the entire use of said factory to manufacturing the wool furnished by the said *Marshall &* *Co.* ; and they agree, that all of said wool so furnished, shall be manufactured, in a good and workman-like manner, into broad-cloth of any colour said *Marshall &* *Co.* shall direct, with the exception of blue ; excepting, however, such wool as said *Marshall &* *Co.* shall think best to have worked into *satinet ;* and the warp for what may be worked into satinet is to be paid for as follows, *viz.* said *Marshall &* *Co.* are to pay fifty-five *per cent.* of the cost of the same, and said *French*

and *Hubbell* forty-five *per cent.* of it; and any expense for insurance, which may be effected on wool or cloth, to be paid for, by said *Marshall & Co.* and said *French* and *Hubbell*, in the same ratio as their interest is in the final division of the avails of the cloth; and in case of the destruction of any wool or cloth by fire, the amount which may be received for the same, to be divided, as near as may be, as either party may sustain loss. In the purchase of wool, said *French* is to render such assistance as may be requested, without making any charges further than may be necessary to pay for the travelling expenses and keeping, when called from home. After the wool is delivered at the factory, said *French* and *Hubbell* are to be at all the expenses for fitting the cloth for market, except the boxing of said cloth and sending to market, which expense to be divided in the same ratio as the final dividend is made. When said cloths are finished as aforesaid, they are then to be at the disposal of said *Marshall & Co.*, who are to cause them to be disposed of, in the best manner which they may consider most for the interest of the whole concern; and the net proceeds of all said cloth, after deducting the incidental and necessary expenses of travelling and other proper charges of sale, are to be divided as follows, *viz.* said *Marshall & Co.* are to reserve and keep to themselves fifty-five *per cent.* of the avails of said cloths, and are to pay over to said *French* and *Hubbell* the balance, being forty-five *per cent.* of the avails of the same. And it is further agreed, that provided in the sale of the cloth the fifty-five *per cent.* to be allowed to said *Marshall & Co.* should not be sufficient to remunerate to them the capital, together with eight *per cent.* annual interest, then and in that case, they are to be allowed the privilege of reserving to themselves ten *per cent.* more of the avails of said sales, or so much of the avails of said sales as will be necessary to remunerate them for the capital actually invested, with an interest on the same at the rate of eight *per cent. per annum.* And it is also further agreed, that in case said *French* and *Hubbell* should be in want of funds to carry on said establishment sooner than can be realized from the actual sales of the cloth, then and in that case, said *Marshall & Co.* are to advance their funds, to a reasonable amount, not exceeding, however, their probable interest in any cloths which they may have actually finished and delivered over to said *Marshall & Co.* for actual sale. And

*Litchfield,*
*June, 1837.*

Loomis
*v.*
Marshall.

on such funds as are furnished for said *French* and *Hubbell*, they are to allow said *Marshall & Co.* the lawful interest, until actually paid from their share of the sales of said cloths.

" In witness whereof, we have hereunto set our hands, this 1st day of *June*, 1833." [Signed by the parties.]

The defendant, *French*, it was admitted, had, previous to the execution of this agreement, occupied the factory therein mentioned in the manufacture of cloths ; and after the agreement, *Hubbell* also went into the factory, and assisted therein, until the 7th of *April*, 1834, when his name, by consent of all parties, was striken out of the concern ; and the defendants agreed, that cloth should be manufactured of a blue colour, upon the same terms as are specified in the writing, except an additional price for the increased expenses. The defendants *Marshall, Rockwell, Bass* and *Jarvis* resided at a distance from the factory, and supplied wool for it ; and *French* did the business at the factory.

The defendants claimed, that the respective parties transacted the business in pursuance of the stipulations of said agreement, and in no other manner. They also claimed, that the plaintiff was employed, by *French* only, to do the work and labour in question ; and that this agreement was only a mode of payment, by those who furnished the wool, to those who manufactured it.

The plaintiffs, on their part, claimed, that this agreement constituted a partnership between the defendants ; and that they were, therefore, jointly liable for the work and labour done by the plaintiff.

The Chief Justice charged the jury, that this was an agreement, by which the defendants became liable to the person who performed work and labour for the manufacture of the cloth in the establishment ; and that by virtue thereof, and the arrangement to colour blue, the defendants were liable to the plaintiff for the work and labour by him performed, unless he had done it upon the sole credit of *French*.

The plaintiff obtained a verdict ; and the defendants moved for a new trial for a misdirection.

*T. Smith* and *Church*, in support of the motion, after premising, that the defendants had had no communication with the plaintiff in relation to the work in question ; that the firm

of *Marshall & Co.* was not used at the factory ; that the business done there was not so done as to hold out *Marshall & Co.* as partners with *French* and *Hubbell* in fitting the cloths for market ; that the defendants have not, by any express stipulation, made themselves partners, so as to be jointly responsible to creditors ; but that, on the contrary, if this is a partnership, it is so by construction of law, in opposition to the stipulations of the agreement—contended, That to constitute a partnership, so that the act of one shall bind another, the parties must, as principal traders, unite their money, property, labour or skill, in some business, with an agreement to divide or share, in some stipulated manner, the ultimate profits and losses of the concern. *Grace* v. *Smith,* 2 *Bla. Rep.* 1000. *Waugh* v. *Carver* & al. 2 *H. Bla.* 247. *Coope* & al. v. *Eyre* & al. 1 *H. Bla.* 48. *Holmes* v. *The United Insurance Company,* *Johns. Ca.* 331. A communion in profit and loss necessarily involves a *mutual accountability* as to the property and dealings of the concern co-extensive with that communion. *Ex parte Hamper,* 17 *Ves.* 403. And it may be laid down as an universal rule, that there is no partnership as to creditors, unless the terms of the agreement be such, that the parties to it have a right to call for an *account ;* for in no other way can there be a participation of profit and loss. *Dixon* & al. v. *Cooper,* 3 *Wils.* 40. *Benjamin* v. *Porteus,* 2 *H. Bla.* 590. *Wilkinson* v. *Frazier,* 4 *Esp. Rep.* 182. *Dry* v. *Boswell,* 1 *Campb.* 329. *Wish* v. *Small,* 1 *Campb.* 331. n. *Mair* v. *Glennie,* 4 *Mau. & Selw.* 240. *Rice* v. *Austin,* 17 *Mass. Rep.* 197. *Muzzy* v. *Whitney,* 10 *Johns. Rep.* 226. The participation in the profit or loss must be *joint* and *mutual.* The parties must take each some share of the profit or bear some part of the loss, indefinitely, according to the result of the joint undertaking ; or, which is the same thing, the agreement must be such, that if one gains or loses, the other shall gain or lose also ; (though it need not be in equal proportion ;) for if the gain or loss of one is to be wholly independent of the gain or loss of the other, there is not any such communion or mutuality as is necessary to constitute a partnership, and render the partners liable to creditors. *Coope* & al. v. *Eyre* & al. 1 *H. Bla.* 37. 43, 4. 48. *Waugh* v. *Carver,* 2 *H. Bla.* 246. *Post* v. *Kimberly,* 9 *Johns. Rep.* 504.

In the present case, the gain or loss of one party had no con-

*Litchfield,*
*June, 1837.*

*Loomis*
*v.*
*Marshall.*

nexion with or dependence on the gain or loss of the other. ) In the language of *Kent,* Ch. J. in *The United Insurance Company* v. *Scott* & al. 1 *Johns. Rep.* 117. "each party was to have a distinct share" of the business, "and to manage it according to his discretion." "There was no community between them as to profit or loss." The parties, in their respective departments, were to be wholly independent of and irresponsible to each other, so that wool of a good quality was furnished, on the one hand, and the cloths were manufactured in a workmanlike manner, on the other. There was to be no accounting that would comprehend their respective expenditures in those departments ; and consequently, as to those expenditures, there can be no participation in profit or loss. The profits of *Marshall & Co.* do not depend at all upon the cost of the machinery, labour and materials to be furnished by *French* and *Hubbell ;* and the profits of *French* and *Hubbell* do not depend at all upon the cost of the stock. In one case only does the cost of the stock come into the account ; and that is, when it, with the interest at 8 *per cent. per annum,* exceeds 55 *per cent.* of the avails of the sales ; and even then, the account is to be taken merely to ascertain the fact of such excess, to enable the parties to fix the rate of distribution, and not for the purpose of adjusting their concerns upon the principle of participation in profit and loss. There was to be a division, not of profit and loss, but of the net proceeds of the sale, or what is the same thing, of the gross proceeds of the business, in such a proportion as to the parties concerned, would be just and reasonable.

The cases in which contributors to a common object have been held not to be partners, may be classed as follows. First, where the share which one party receives, (even although it be of profits) is properly referable to compensation for services rendered and expenses incurred in the business. *Dixon* & al. v. *Cooper,* 3 *Wils.* 40. *Benjamin* v. *Porteus,* 4 *Esp. Rep.* 182. *Wilkinson* v. *Frazier,* 2 *H. Bla.* 590. *Mair* v. *Glennie,* 4 *Mau. & Selw.* 240. *Rice* v. *Austin,* 17 *Mass. Rep.* 197. *Muzzy* v. *Whitney,* 10 *Johns. Rep.* 220. *Baxter* v. *Rodman,* 3 *Pick.* 435. Secondly, where the contribution of each party is separate and distinct, and the subject of the dealing is to be divided specifically between the parties. *Hoare* v. *Dawes, Doug.* 371. *Coope* & al. v. *Eyre* & al. 1 *H. Bla.* 37. *Gibson* & al. v. *Lupton* & al. 9 *Bing.* 297. (23 *Serg. &*

*Lowb.* 283.) Thirdly, where the contribution of each is separate and distinct, and the parties divide the gross earnings of the business in the proportion specified in the contract. *Dry* v. *Boswell,* 1 *Campb.* 329. *Wish* v. *Small,* 1 *Campb.* 331. n. *Cutler* v. *Winson,* 6 *Pick.* 335. *Muzzy* v. *Whitney,* 10 *Johns. Rep.* 226. *Turner* v. *Bissell,* 14 *Pick.* 192.

In this case, the share which *French* and *Hubbell* were to receive of the avails of the sales, is to be considered as a remuneration for their services and expenses in converting the wool of *Marshall & Co.* into cloth.

*P. Miner,* contra, contended, That under the agreement entered into by the defendants, they were liable as partners to creditors.

In the first place, there was capital stock furnished by *Marshall & Co.* and by *French* and *Hubbell ;* and their capitals were united in the transaction of business. *Marshall & Co.,* on their part, were to put in a supply of wool from the date of the agreement, which was their capital—at least, a part of it ; and they were to furnish a full supply for the period of two years and four months—*i. e.* they were to keep their capital good. *French* and *Hubbell,* on their part, agreed " to devote the entire use of the factory to manufacturing the wool"—*i. e.* to furnish a factory at their own expense, which was their capital—at least, a part of it. They, too, were to keep their capital good ; and no part of it was, at any time, to be appropriated to their own private use.

It is immaterial whether both parties contributed capital of the same species or not ; for in the formation of a partnership, it makes no difference whether both parties contribute money or other property, or one contributes property, and the other labour and skill ; the latter being as much a part of the capital, as the former. *Musier* v. *Trumpbour,* 5 *Wend.* 274. 3 *Kent's Com.* 25. *Collyer,* 8. *Peacock* v. *Peacock,* 16 *Ves.* 49. *Reid* & al. v. *Hollinshead* & al. 4 *Barn. & Cres.* 867. (10 *Serg. & Lowb.* 460.)

Further ; according to both the agreement and the nature of the business, there was a mutual, joint and common interest between the parties running throughout the whole concern. *Marshall & Co.* had an interest, even in the factory itself, the moment they purchased the wool ; for were its

Litchfield,
June, 1837.

Loomis
v.
Marshall.

"*use*" at any time to be in part or entirely suspended, the wool must remain on their hands, unproductive, during the suspension. They had an interest in purchasing wool cheap; because the ultimate proceeds or profits would be proportionably increased. It was also their interest to have the wool most skilfully manufactured; because the value of it would thus be enhanced, and produce greater profits without additional expense to them. So it was their interest to buy warp for satinet cheap; to effect insurance at a low rate; to provide for the boxing of cloths, in the most economical manner; to diminish the expenses of transportation and sale; to sell at short credits, that the factory might continue to run, without their being obliged to furnish *French* and *Hubbell* with funds; and to have the net proceeds of all the cloths as great as possible. On the other hand, *French* and *Hubbell* had a parallel interest in each of these items.

Again; both were interested in the loss that might be caused by fire, and were to receive insurance money, in proportion as each sustained loss—*i. e.* according to the capital in money and labour, each had at the time invested.

That this mutual interest appearing from the agreement, is sufficient to establish a partnership, see the following authorities. *Gouthwaite* v. *Duckworth*, 12 *East*, 425, 6. *Everitt* v. *Chapman* & al. 6 *Conn. Rep.* 347. *Cheap* & al. v. *Cramond*, 4 *Barn. & Ald.* 663. (6 *Serg. & Lowb.* 556.) *Cumpston* v. *McNair*, 1 *Wend.* 457. *Musier* v. *Trumpbour*, 5 *Wend.* 274. *Sims* v. *Willing* & al. 8 *Serg. & Rawle*, 103. *McIver* v. *Humble*, 16 *East*, 169. 174. 3 *Kent's Com.* 26, 7. *Collyer* 8. 9. 14. 16. 19.

If the parties to an agreement expressly stipulate between themselves not to be partners; yet if they participate in the profits and loss of their business, they are partners *quoad* third persons. *Felichy* v. *Hamilton*, 1 *Wash. C. C. Rep.* 492. *Waugh* v. *Carver*, 2 *H. Bla.* 235. 246. *Hesketh* v. *Blanchard*, 4 *East*, 144. *Collyer* 44.

HUNTINGTON, J. At the trial, the jury were instructed, that the agreement dated *June* 1, 1833, constituted the defendants partners, so far at least, as to make them liable as such, in this suit, to the plaintiff. The general question submitted to this court, is upon the propriety of this instruction.

That the parties to this agreement did not *intend* to create a partnership, either as between themselves or third persons, is, we think, very obvious from the facts set forth in the motion, connected with the stipulations contained in the agreement: and if they are liable as partners, they are made so, by construction of law. Those who were to furnish the wool, supposed they alone were responsible for the purchase money; and those who were to perform the labour and provide the materials necessary to complete the manufacture of it, believed they alone were liable for the price of the labour and materials. If they are all jointly liable, their liability arises from the fact that they have entered into a contract, which, as between themselves and the plaintiff, controuls their clear intention, if not express stipulation, to the contrary. And it is undoubtedly true, that a person may expressly refuse to be responsible as partner, and yet, in the same instrument which contains that refusal, may agree to such terms as will in law constitute him a partner. Whether these defendants have entered into such terms, is to be determined, by a fair construction of the agreement which they have executed. While, on the other hand, we should be careful to adopt no rule of construction, which would enable parties who are interested in the profits of business, as profits, to deprive the creditors of any portion of the fund on which they have a just claim for the payment of the debts due to them; so, on the other hand, (to use the language of *Kent*, Ch. J. in *Post* v. *Kimberly*, 9 *Johns. Rep.* 504.) " we must be careful not to carry the doctrine of constructive partnership so far as to render it a trap for the unwary. We must in this, as in other cases, look to the *entire* transaction, in order to judge correctly of its nature and tendency. And we think, (as is said by *Gould*, J. in *Coope* & al. v. *Eyre* & al. 1 *H. Bla.* 44.) ' cases of this nature should stand on broad lines, not on subtleties and refinements, the source of litigation and disputes.' "

A community of interest in land, does not, of itself, constitute a partnership; nor does a mere community of interest in personal estate. There must be some joint adventure, and an agreement to share in the profit of the undertaking. *Porter* v. *McClure* & al. 15 *Wend.* 187. *Green* v. *Beesley*, 2 *Bing. N. C.* 108; *Fereday* v. *Hordern*, *Jacob* 144. This community of profit, is the test to determine whether the contract be one of partnership; and to constitute it, a partner must not

only share in the profits, but share in them as a *principal ;* for the rule is now well established, that a party who stipulates to receive a sum of money in proportion to a given *quantum* of the profits, as a reward for his labour, is not chargeable as a partner. The cases are collected and well arranged, by *Coll-yer,* in his treatise on *Partnership,* 14. 15. & seq. and by *Ca-ry,* 8, 9, 10. 11. They embrace factors and brokers, who receive a commission out of the profits of the goods sold by them ; masters of vessels, who share in the profit and loss of the adventure in lieu of wages ; seamen employed in the whale fisheries ; shipments from this country to *India* on half profits ; those who receive, in the form of rent, a portion of the profits of a farm or tavern ; and a variety of other adventures, to which it is unnecessary particularly to refer. *Dry* v. *Boswell,* 1 *Campb.* 330.; *Wish* v. *Small, Ib.* note.; *Hesketh* v. *Blanchard,* 4 *East,* 143.; *Mair* & al. v. *Glennie* & al. 4 *M. & S.* 240. *Dixon* v. *Cooper,* 3 *Wils.* 40.; *Withington* v. *Herring* & al. 5 *Bing.* 442.; *Rice* v. *Austin,* 17 *Mass. Rep.* 197.; *Baxter* & al. v. *Rodman,* 3 *Pick.* 435.; *Cutler* & al. v. *Wisner,* 6 *Pick.* 335.; *Turner* v. *Bissell* & al. 14 *Pick.* 192.; *Muzzy* v. *Whitney,* 10 *Johns. Rep.* 226.; *Ross* v. *Drinker,* 2 *Hall,* 415.; *Harding* v. *Foxcroft,* 6 *Greenl.* 76.; *Thomson* v. *Snow,* 4 *Greenl.* 264.; *Miller* v. *Bartlett,* 15 *Serg. & Rawle* 137. The rule which these and other cases establish, is founded on the distinction which has been taken between agreements by which the parties have a specific interest in the profits themselves, as profits, and such as give to the party sought to be charged as a partner, not a specific interest in the business or profits, as such, but a stipulated proportion of the profits as a compensation for his labour and services. **Ex** parte *Chuck,* 8 *Bing.* 469.

We are aware this distinction has not received the approbation of Lord *Eldon,* who says, in ex parte *Hamper,* 17 *Ves.* 404.: " The cases have gone farther to this nicety, *upon a distinction so thin that I cannot state it as established upon due consideration,* that if a trader agrees to pay another person for his labour in the concern, a sum of money even in proportion to the profits, equal to a certain share, that will not make him a partner ; but if he has a specific interest in the profits themselves as profits, he is a partner. It is clearly settled, *though I regret it,* that if a man stipulates, that, as the re-

Litchfield,
June, 1837.

Loomis
v.
Marshall.

ward of his labour, he shall have, not a specific interest in the business, but a given sum of money even in proportion to a given *quantum* of the profits, that will not make him a partner; but if he agrees for a part of the profits, as such, giving him a right to an account, though having no property in the capital, he is, as to third persons, a partner." *Id.* 412. Ex parte *Rowlandson*, 1 *Rose*, 91. Ex parte *Watson*, 19 *Ves.* 458. We do not propose to examine the reasonableness of the doubts expressed by this distinguished judge. Such enquiry we consider closed, by a series of precedents, which we do not feel at liberty to disregard. They have settled principles, which have, for a long period, regulated the agreements of parties, in cases to which they are applicable ; and they ought not now to be questioned.

The distinction to which we have referred, in our opinion, embraces the present case. The object of *Marshall* and his associates, was, to have their wool manufactured into cloth. They resided at a distance from the factory occupied by *French* and *Hubbell*, and were unacquainted with the business of manufacturing. They were willing to avail themselves of the opportunity, which the possession of the factory by *French* afforded, of having their wool worked into cloth, and of the skill of *French* and *Hubbell*, to prepare it for market. To secure and increase exertion, they agreed to give them, as a reward for their services and the materials which they should furnish, a certain proportion of "the net proceeds of all the cloths, after deducting incidental and necessary expenses of transporting and other proper charges of sale." It is not expressed, in terms, to be for such compensation ; but this is its legal meaning. In many of the cases to which we have referred, the language of the agreements was not more explicit than in the one now under consideration ; but looking at the *entire* transaction, such was considered the obvious meaning of the parties. *French* and *Hubbell* had no other interest in the profits, than such as arose from the agreement to pay them for their labour, &c., in a specific proportion of the amount of the sales of the manufactured article.

It was supposed, however, that this agreement ought not to receive the construction we have given it, inasmuch as *Marshall & Co.* were to furnish stock *for two years ;* and during the whole of that period, the factory and time of *French* and

*Hubbell* were to be devoted to the business of manufacturing it into cloth. We do not perceive how these facts can vary the construction of the agreement. Whether a specified quantity of wool was to be worked, or so much as would be "a full supply for two years;" or whether *French* and *Hubbell* were to be constantly employed in the business of *Marshall & Co.*, or might occasionally do business on their own account; does not, we think, evince any other intention of the parties to the agreement, than that which appears to us quite obvious, *viz.* that *French* and *Hubbell* were to receive a compensation for their labour, by a percentage on the sales. Neither the quantity to be manufactured, nor the time to be devoted to the business, can vary the relation between the parties. If they contemplated a division of the profits, as such, they were partners, whether the quantity of wool was specified, or was indefinite— whether the time occupied in its manufacture, was longer or shorter. If they provided for the payment for the labour, by allowing a certain sum proportioned to the profits, no partnership was created, although the quantity to be worked might be large, and the period of employment extended to two years.

It was further insisted, that as the agreement contained a stipulation that *French* and *Hubbell* should furnish the warp, to be paid by them and *Marshall & Co.* in the proportion of forty-five to fifty-five *per cent.* of its cost, it is fairly to be inferred, they contemplated a joint ownership of the property, and a joint participation in the profits. A similar argument was urged in the case of *Turner* v. *Bissell* & al. 14 *Pick.* 192.; and we are satisfied with the answer given to it by the court. " The circumstance that *Root* was to find warps, does not affect the principle upon which the distinction as to compensation is founded. If *Bissell* had agreed with *Root*, to pay him a certain sum for his services and for supplying the warp, there could be no pretence for holding them as partners; and we can perceive no difference in principle, arising from the circumstance that the compensation was to be determined according to the amount of sales."

It was also urged, that the stipulation as to insurance, furnished evidence of a joint interest in the business—in the profits as well as in the property. The agreement provides, that the expense of insurance effected on wool or cloth, is to be borne by the parties, in proportion to their interest in the final divis-

ion of the avails of the cloth ; and if any wool or cloth should be destroyed by fire, the amount received under the policy, is to be divided, as near as may be, *as either party may sustain loss.* We think this clause in the agreement shows, that the parties contemplated a continued and sole ownership of the wool by *Marshall & Co.,* after its delivery at the factory, rather than a joint ownership by them and *French* and *Hubbell.* The premium of insurance was to be paid in the same proportion as the avails of the sales were to be divided. This was an expense, which the parties believed it just, should be reimbursed in that ratio. But the application of the moneys which might be received, in the event of a loss, was to be governed by different principles. It was to be divided, as near as it could be, according to the loss which each might sustain. If the wool only was destroyed, *Marshall & Co.* would alone be interested in the amount received from the insurers ; if the materials furnished by *French* and *Hubbell* were alone consumed, they alone would be entitled to it ; if cloth was burnt, each would sustain a loss—*Marshall & Co.* in the wool, *French* and *Hubbell* in the labour and materials. We do not mean, however, to prescribe a rule, by which the division should have been made, in the latter case. We express no opinion upon the question, whether the price of the wool, and of the work and materials should be ascertained, by reference to their actual value, or to the sums paid by the respective parties. We mean merely to say, that when the parties agree, that it shall be divided in proportion to the amount of the loss sustained by each respectively, it can hardly be supposed they intended to create any *joint* interest in the wool furnished by the one, or the materials and labour furnished by the other. If such was their intention, it is difficult to perceive why they did not promise the same ratio of distribution of the moneys which might be paid on the policy, as they did of the expense of the premium and the avails of the sale of the manufactured goods. It is not easy to discover an intention to make a joint concern of the whole business, when provision is made for a division of the amount paid on a loss, *in proportion to the loss which each might sustain.*

If the views we have thus expressed, be correct, the case before us is not one of partnership, but is properly referable to that class of cases, in which one party receives a share of the

*Litchfield,*
June, 1837.

Loomis
*v.*
Marshall.

profits or avails, as a compensation for services rendered, labour performed and expenses incurred in the business.

It was claimed in the argument, by counsel, that in the present case, *French* and *Hubbell* had no interest in the *profits*, as that term is understood in the law of partnership. "The main feature in the contract of partnership, is the communion of *profit* between the parties. Without that quality, a partnership cannot exist." *Coll.* 44. The cases are to be laid out of view, in which a liability as partner may exist, *quoad* third persons, arising from the use of his name with his consent, or holding himself out to the plaintiff, or under such circumstances of publicity as to satisfy a jury that the plaintiff knew of it, and believed him to be a partner; in which cases he would be liable to the plaintiff, in all transactions in which he engaged and gave credit to him upon the faith of his being such partner. *Dickinson* v. *Valpy*, 10 *B. & C.* 128. The motion does not state any facts which require the application of these principles. If *Marshall & Co.* are partners, they are such, by force of the written agreement. Does *that* give *French* and *Hubbell* any share of the *profits?* It was remarked, that it provides for no division of the profits *by name*, but of "the net proceeds of all the cloths," deducting certain charges and expenses. It was said, that the result to these parties might be different, if the basis of the division was the net *profits*, instead of the net *sales;* that one party might make a profit, and the other sustain a loss, or both the one or the other, but neither the gain nor the loss would be reciprocal or proportioned to each other;—that this would depend on the distinct and independent operations of each, and without any relation of the one to the other;—that the profits of *Marshall & Co.* would not, in the slightest degree, depend upon the cost of the machinery, labour and materials furnished by *French* and *Hubbell*, nor the profits of the latter be connected with the cost of the wool, which comes into view only when it exceeds, with interest at eight *per cent. per annum*, fifty-five *per cent.* of the avails of the sales, and then, not for the purpose of closing the concern upon the principle of participation in profit and loss, but to ascertain the fact of such excess, and thus enable the parties to fix the ratio of distribution. If this difference in the result, between a division of the profits, and a division of the avails of the sales, should be kept in view, and in connexion with the

facts that these parties are contributors to a common object, and the contribution of each party is separate and distinct, and the final division is to be of the proceeds of the sales, and not of the net profits of the business, it was supposed, a communion of *profit* could not easily be discovered. It was insisted, that the profit is the sum remaining after the payment of all expenses connected with the adventure;—that from the gross amount of sales, are to be deducted the cost of all the materials, expense of manufacturing, and all other expenses which are a charge on the business; and if any thing remains, that is *profit*, and nothing else is such;—and that in the case before the court, neither the price of the wool, nor of the labour and materials furnished by *French* and *Hubbell*, were to be considered in the division of the proceeds;—and that as the profits of the business were not to be divided, but the avails of the sales, it was contended, there could be no community of interest in the profits, upon such a division. The following authorities were cited in support of these views. *Hoare* & al. v. *Dawes* & al. *Doug*. 356. *Gibson* & al. v. *Lupton* & al. 9 *Bing*. 297. *Coope* v. *Eyre*, 1 *H. Bla*. 37. *Cheap* & al. v. *Cramond*, 4 *B. & A*. 663. *Catlin* & al. v. *Wisner*, 6 *Pick*. 335. *Lowrey* v. *Brooks*, 2 *McCord*, 421.

Again; had the agreement provided for a division of the *profits*, instead of a division of the avails of the sales, but without reference to the original cost of the wool, labour and materials, it was asked, would there have been any *mutuality* in the profits? It was admitted, that where by the express terms of the contract, a partnership stock is created in which all have a joint property, but one is not to have any definite aliquot part of it, yet is entitled to an account of the profits as between themselves, so as to get, as the case may be, at least a specific amount out of the clear profits, the parties to such a contract would be partners; yet it was said, that in the present case, it is quite clear, that in the division of the proceeds, one of the parties might make a profit, while the other would sustain a loss; that if *Marshall & Co*. had purchased the wool at a low price, they might have been more than reimbursed the original cost and their proportion of the expenses, while *French* and *Hubbell*, in procuring labour, machinery, materials, &c., might have expended an amount exceeding what they were entitled to receive under the agreement; and that by a change of cir-

*Litchfield,*
*June, 1837.*

*Loomis*
*v.*
*Marshall.*

cumstances, and the happening of events, *Marshall & Co.* might suffer a loss, in closing the business, while *French* and *Hubbell* would realize a profit. The question was then put to us, whether there can be such a communion or mutuality in profit and loss, as will constitute a partnership, where, by the agreement, the gain or loss of one party is wholly independent of the other, so that while the business in which both are engaged, is a source of profit to one, it results in a loss to the other? And we were referred to the observations of different judges in the following cases. In *Coope* v. *Eyre, Gould*, J. says, " there was no communication between the buyers as to profit and loss. The profit or loss of the one, might be more or less than that of the other." In the same case, Lord *Loughborough* says, " in order to constitute a partnership, a communion of profit and loss is essential." In *Waugh* v. *Carver*, 2 *H. Bla.* 235. 246. *Eyre,* Ch. J. says, "the case is reduced to the single point, whether the *Carvers* did not entitle themselves and did not mean to take a moiety of the profits of *Giesler's* house *generally* and *indefinitely*, as they should arise, at certain times agreed upon for the settlement of their accounts." In *The United Insurance Company* v. *Scott &* al. 1 *Johns. Rep.* 105., *Kent,* Ch. J. says, "there was no community between them, as to profit and loss ;" and in *Post* v. *Kimberly,* the same judge remarks, " the profit and loss of the voyage, was never to be joint and mutual. The eventual gain or loss of one party, might be very different from that of the other."

We do not express an opinion upon either of these points presented by the counsel for the defendants ; for our decision is placed on other grounds, which have been stated. We refer to them, and the argument by which they are attempted to be sustained, that it may appear, they have not been overlooked. They may, with propriety, be examined, when necessary to the decision of cases to which they are applicable.

When the agreement between these parties, is viewed with reference to its object, the condition of the parties, the stipulations into which they have entered, and the consequences which would result from holding them liable as partners, in their application to the trade and manufactures of the country, we feel no hesitation in saying, that neither by express agreement, nor by construction of law, are they constituted partners. We find

no intimation that such was their intention; no words used, *Litchfield,* which evince that *French* and *Hubbell* were to have a legal interest in the wool, or *Marshall & Co.* in the materials furnished by *French* and *Hubbell;* no suggestion that all were to be responsible for the purchases and on the contracts of each relating to the business; no evidence that one was to repose confidence in the other, as partner. The parties, in their respective spheres of operation, were independent of each other, excepting that one was to "furnish wool, of a good quality, for two years," and the other was to "manufacture it, in a good and workman-like manner." The labour of one was to be employed upon the property of the other, with a view to its amelioration. Were we to hold, that this agreement creates a partnership, we think we should change the existing law, as to factors, brokers, agents, ship-masters and seamen, who share in the profits of a business, by way of commission, or in lieu of wages;—should introduce great perplexity and confusion in the adjustment of their legal rights and remedies;—should establish a doctrine, which would constitute landlords and tenants, where farms are taken on shares, partners in all contracts relating to the occupancy and improvement of the farms; and declare to the enterprising citizens of our country, who possess industry and skill, but are without capital, that they can neither improve farms, nor manufacture goods, nor be employed as mechanics, for a compensation proportioned to the avails of the sales—the product of their labour and skill,—without involving themselves and their employers, in such responsibility as partners, as would, to a considerable extent, deprive them of employment. We should require well established precedents, too numerous to be overruled, before we should yield our assent to a doctrine which would produce such consequences.

It was supposed such a precedent exists, and was established, by this court, in the case of *Everitt* v. *Chapman,* 6 *Conn. Rep.* 347. That case, we think, is clearly distinguishable from the one now before the court. There, it was agreed, the parties were, at the time of the purchase of the hides, and had been, for several months previous, in partnership, for the purpose of manufacturing leather. The agreement states, that they had united themselves into a company, for the purpose of transacting business to advantage; that the "partners" were to exert themselves to enrich the firm; that the "company"

*June, 1837.*

Loomis
*v.*
Marshall.

was to be dissolved at any time, by the consent of the parties. In the present case, no partnership was, in terms, created; nor is there, in the articles signed by the parties, any allusion to the fact that they are partners. In the case cited, although it is stipulated, that each party is to furnish, on his own credit, one half of the hides necessary to keep the tannery in operation, and to receive and make market for one half of the leather; yet there is nothing in these clauses, which excludes an entire participation in the profit and loss. The court, therefore, said, "the agreement was, substantially, to share in the profits and loss:" and the case was considered analogous to that of *Gouthwaite* v. *Duckworth* & al. 12 *East,* 421., where two of the defendants purchased goods of the plaintiff, on their own credit, for an adventure, in which they and *Duckworth* were to share in the profit and loss. In the case before us, *French* and *Hubbell* were not under obligation to furnish any wool, nor to pledge their credit for it. In *Everitt* v. *Chapman,* it is not entirely clear, that when the leather was manufactured, it was to be equally divided, and a moiety to be taken by each, as his separate property. It would seem rather to have been the intention of the parties, that both should bear equally the burden of disposing of the leather in market, for the equal benefit of both, subject to accountability. This construction of their agreement, comports with the language used. *Chapman* was "to receive and make market for one half of the leather." *Mott* was to "make a market" for the other half. The fair meaning of these expressions is, that each of the parties was to take one half of the leather to the best market, and account for the proceeds, when sold. In this view, the stipulation that "the partners should do what was in their power, to increase the property of, and strengthen and enrich, the company or firm," was of much importance. The parties were not merely to furnish stock sufficient to keep the tannery in operation; cause it to be kept in good, useful and tenantable repair; to do the work "in the tannery, in a faithful and workman-like manner;" but the leather, when completed, was to be sold in market; each party was to be at the expense, and to perform the labour, of disposing of a moiety, to the best advantage; and thus, the property of the firm be increased and the firm enriched, by the exertions of both, in selling in the best market and at the highest prices. If this be a correct view of the con-

tract in that case, the court might well have enquired, "where is there room for a question?" It was a clear case of partnership. If, however, the leather was to be divided into moieties, each taking his portion without further accountability, it was held by the court, that the purchase of the hides was for *all* the partners; that had a loss been sustained, it must have been borne by the three, and any profit shared in like manner; and that thus the profit and loss were meant to be joint and mutual. In the case under consideration, we cannot give such a construction to the agreement, as would make *French* and *Hubbell* liable for all the wool purchased by *Marshall & Co.*, and the expenses of transportation, and for a share of any loss and damage it might sustain after it was purchased, and before its delivery at the factory; nor, on the other hand, to impose a liability upon *Marshall & Co.* for the rent of the factory, for debts contracted in the purchase of machinery to work the wool into cloth, or for dye-stuffs and other materials and labour necessary to its completion.

Upon the whole, a majority of the court are of opinion, that the instruction to the jury was erroneous; and therefore, advise a new trial.

In this opinion, BISSELL, CHURCH and WAITE, Js., concurred.

WILLIAMS, Ch. J. dissented, considering the parties to this agreement as participating in the profits and losses, and the case as within the principle recognized in *Everitt* v. *Chapman.*

<div align="center">New trial to be granted.</div>