SILAS G. PATTERSON AND ANOTHER, ADMINISTRATORS,
*vs.* FREDERICK KELLOGG AND ANOTHER.

Where *A* has a claim to an account of income from certain property against *B* down to a certain date, and from that date against *C*, the grantee of *B*, he can not join *B* and *C* as co-defendants in the same suit. The liability of *B* to account not extending beyond his sale of the property to *C*, there could be no joint liability.

This could not have been done before the passage of the Practice Act, and nothing in that act authorizes it.

The report of a committee in a suit for an account ought not to be rejected or set aside if it presents all the facts required to enable the court to settle on an equitable basis the accounts between the parties.

[Argued May 5th—decided June 26th, 1885.]

ACTION for an account and for equitable relief; brought to the Superior Court in Litchfield County. Facts found by a committee and judgment rendered (*Andrews, J.,*) in favor of one of the defendants upon a counter-claim asking for a foreclosure and dismissing the complaint as to the other defendant. The plaintiffs appealed. The points

decided by the court will be sufficiently understood from the statement of the facts in the opinion.

*W. F. Taylor*, for the appellants.

*A. H. Fenn* and *D. T. Warner*, for the appellees.

CARPENTER, J. Pierce, the plaintiffs' intestate, and the defendant Kellogg, were the joint owners of a wood lot and a saw mill standing thereon, and carried on the wood and lumber business as partners for more than thirty years. In 1872 the mill became old and the machinery worn, and a new mill was built with new machinery. Kellogg advanced most of the money for that purpose, and Pierce gave him a note for his share, secured by a mortgage of his interest in the real estate. In 1875 that mill burned down and another one was built in its place, Kellogg advancing the money as before, taking another note and mortgage from Pierce.

Pierce died August 6th, 1881. Kellogg continued the business until February 8th, 1882, when he sold his half of the real estate to the defendant Calhoun, and assigned to him the two notes and mortgages. On the 2d of August, 1882, this suit was brought, alleging, among other things, that the notes were without consideration, that they had been paid, that Kellogg had had the management of the partnership business, taking the avails thereof; that he had in his possession a large quantity of timber, lumber and other personal property belonging to the partnership; that after the death of Pierce he continued the business without the consent and against the objection of the plaintiffs; that he and Calhoun carried it on jointly after February 8th, 1882, and that the defendants had refused to account for the same.

The complaint prays for an account, for a re-conveyance if the notes shall be found to have been without consideration or to have been fully paid, and for the privilege to redeem if the notes were for a good consideration and not paid.

An accounting was had between Pierce and Kellogg before a committee, the notes were found to be for a good consideration, and an unpaid balance due thereon. The court rendered a judgment on the counter-claim of the defendant Kellogg, foreclosing the equity of redemption unless the plaintiffs should redeem within the time limited.

The defendant Calhoun made answer that on the 4th day of August, 1882, he re-assigned the notes and mortgages to Kellogg and delivered to him the possession of the mortgaged premises, and that now he had no interest in the causes of action mentioned in the complaint. To that answer there was a demurrer. Without any judgment on the demurrer the complaint was dismissed as to him without costs. The plaintiffs appealed.

The first question arises under the remonstrance. It is somewhat vaguely stated, and the reasons of appeal do not show clearly the question which the plaintiffs made. But by the aid of the brief we conclude that the question is this—that the committee should have held the defendant Kellogg responsible for the income and profits of the business after he sold to Calhoun to the date of his report, and should have stated the account accordingly; and not having done so, that the court erred in accepting the report; that is to say, the court should have rejected the report. We do not think that this exception is well taken, because the report of the committee shows that, after the conveyance to Calhoun, he alone operated the saw-mill, (not that he continued the partnership business,) and that the net receipts therefrom to August 6th, 1882, were $53.80. Perhaps the plaintiffs would have been entitled to have one half of that sum applied on the mortgage notes if they had made that claim. If so, the presumption is that the court would have applied it. But instead of claiming that, they asked that the report be set aside or re-committed, thus involving another trial before the committee. Such a proceeding we think was unnecessary, as the court had before it all the material facts and could have settled upon an

equitable basis the accounts between the parties down to the commencement of the suit.

But the objection involves this further claim, that Kellogg is chargeable with the rents and income from the mortgaged premises from the commencement of the suit down to the date of the report. He is doubtless chargeable for all that he received during that time. But the case shows that Kellogg sold his half of the joint property in February, 1882, and that since that time Calhoun has been in the possession of it. The report expressly states that "after the conveyance by Kellogg to Calhoun, on the 8th day of February, 1882, of his interest in the mill property and woodland, Kellogg had nothing to do with the property so conveyed, *nor with the interest of the estate of Pierce in the same.*" Nor can Kellogg be chargeable on account of the occupancy by Calhoun, because, after the re-conveyance Calhoun held possession of the saw-mill, not as mortgagee, or under the mortgagee, but as tenant in common. And also for the further reason, as the report states, that "no account was rendered to the committee of the receipts and expenditures by Calhoun in running the mill since August 6th, 1882." And it does not appear that either party claimed that any such account should be taken. The committee did not err in not doing what neither party claimed that he should do.

The next question is whether the court erred in dismissing the complaint against Calhoun. The plaintiffs complain that no account was taken of the profits received, either by Kellogg or Calhoun, after the sale to Calhoun. We have already sufficiently considered this claim so far as it concerns Kellogg. So far as it concerns Calhoun it requires further notice.

On the face of the complaint Calhoun was properly made a defendant. He was the owner of the notes, and as such was interested in the relief sought by the plaintiffs. Moreover it is alleged that he in common with Kellogg received income and profits from the partnership property. Immediately after the suit was brought he re-assigned the notes and mortgages to Kellogg and had no further interest in

them; and the report of the committee shows that he received no part of the income in common with Kellogg; so that, as the case finally stood, the plaintiffs had a claim for an accounting by Kellogg of the partnership business down to February 8th, 1882, and after that date a claim against Calhoun for their share of the income from the common property. It will be noticed that the two claims are entirely separate and could not properly be joined in one action. The plaintiffs might with the same propriety have joined the defendants in one suit on several promissory notes held against them respectively. That could not have been done under the old practice, nor will it be permitted under the Practice Act. That act, section 12, provides that any person may be made a defendant who has or claims an interest in the controversy or any part thereof adverse to the plaintiff. In this case Calhoun had no interest in the controversy with Kellogg, nor had Kellogg any interest in the controversy with Calhoun. And so the plaintiffs practically regarded it; for they asked for no judgment on the demurrer, and none was in fact rendered. It is a fair inference from the record that they made no claim against Calhoun before the committee, and asked of the court no judgment against him on the report. Indeed, as the pleadings stood, his case was not before the committee at all. If the plaintiffs had desired to pursue their claim against him, the demurrer should have been first disposed of, and then, if the pleadings presented a proper case for a committee, the parties could have been heard before him.

There is no error in the judgment.

In this opinion the other judges concurred.