MARY ROBERTS, ADMINISTRATRIX (ESTATE OF NATHAN ROBERTS) *v.* ROBERT WEINER

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and ALCORN, Js.

Argued April 5—decided May 15, 1951

*Max Frauwirth,* for the appellant (plaintiff).

*Raphael Korff,* with whom, on the brief, was *Benjamin M. Leipner,* for the appellee (defendant).

BROWN, C. J.   The plaintiff brought this action for an accounting by the defendant upon a joint adventure for the purchase and sale of automobiles which was terminated by the death of the plaintiff's decedent. The court rendered judgment for the defendant upon the ground that the plaintiff had failed to sustain the burden of establishing that there were profits from the venture which were owing to the decedent's estate. She has appealed.   Whether it was essential for the plaintiff to sustain this burden of proof in order to be entitled to an accounting is the question decisive of the appeal.

The facts established by the finding may be thus summarized:  The plaintiff's decedent had been a dealer in used cars in Bridgeport for many years and was reputed to be a shrewd buyer and a good salesman as well as a man of integrity.   The defendant was a licensed used-car dealer with a place of business in Bridgeport consisting of an open lot with a small office building and garage.   In 1947, because of his health, the decedent disposed of his used-car business and retired.   Some months later he entered into an oral agreement with the defendant to buy used cars at his own risk and cost and to pay all expense in reconditioning them for resale, the advertising costs, one-half the weekly salary of the defendant's salesman plus a commission on any sale of such cars made by him, and one-half of the wages of the defendant's mechanic, who

was to make minor repairs and keep the cars polished and salable. It was further agreed that the decedent and the defendant and his salesman would co-operate in efforts to sell any cars on the lot, whether owned by the decedent or the defendant, that the decedent retained full authority to fix the price at which any car financed by him should be sold as well as the price at which any trade-in should be accepted, that any net profits after all costs and expenses had been deducted were to be divided equally between the decedent and defendant, and that the decedent would devote a substantial amount of time to the sale of his own and also the defendant's cars. This arrangement was carried out by the parties from about the first of February, 1948, until the sudden death of the decedent on May 25, 1948. During this period the decedent assisted the defendant in the selection and appraisal of salable used cars, bought and sold a substantial number of used cars, the profits from which sales were equally divided, and in all respects fulfilled his part of the agreement.

Since the decedent had no used-car dealer's license, all cars financed by him were listed in the defendant's name. In this connection, the practice was for the defendant to give to the decedent a note executed in blank as to amount and due date, but specifically referring to the particular car being financed by the decedent. In each instance, the decedent held this note until the car was sold. The defendant then paid the decedent by check the amount of the net costs of the transaction which had been advanced by him, plus one-half the profits, and the note was redelivered to the defendant. These settlements were based upon the record of the transaction kept by the decedent. At his death, he had twenty cars on the defendant's lot for which he held the defendant's blank notes to evidence his ownership. After the decedent's death, the defend-

ant sold the twenty cars and paid to the decedent's estate the full cost and conditioning expense of each car as sold, deducting sales and advertising expense, and withholding whatever net profit was realized. The decedent's son, who was assisting his mother in connection with the decedent's estate, filled in the blanks on the notes on the above basis and, as the payment was received upon each, delivered it to the defendant. The decedent's estate made no contribution toward any effort or expense involved in disposing of the cars during the period required to sell them. In entering into the arrangement, the decedent contemplated that it probably would be terminated in November, 1948. The used-car market was very active at the time and no express agreement was made as to sharing losses. There was no evidence as to what, if any, profits were realized from the twenty sales made by the defendant.

The court concluded that this arrangement for dealing with used cars did not strictly constitute a partnership but was a joint adventure. We have pointed out that "the distinction between a partnership and a joint adventure is often very slight," but that commonly the former is formed for carrying on a general business, while the latter is more often limited to a single transaction or course of transactions. *Dolan* v. *Dolan,* 107 Conn. 342, 349, 140 A. 745. Certainly the arrangement in question sufficed to satisfy the axiom that, "where two or more parties combine their property, money, efforts, skill or knowledge in some common undertaking," it may be held to be a joint adventure. *Lesser* v. *Smith,* 115 Conn. 86, 89, 160 A. 302. In the view which we take of the law, however, it is not of controlling importance to determine which designation is precisely descriptive of the situation in the case before us. "Death of one partner operates to instantly dis-

solve an ordinary partnership. . . ." Mechem, Partnership (2d Ed.) § 361. While the death of one of the parties does not necessarily terminate a joint adventure, the death of the decedent did have that effect in the present case, where not only is there no claim to the contrary but the agreement called for continuing personal participation by the decedent, no definite term of duration was specified and no provision was made for continuing the arrangement after the death of either party. 48 C. J. S. 822.

Upon the death of the decedent, the defendant, who had possession of, as well as the legal title to, the twenty cars which had been purchased and prepared for sale by the decedent, held them upon a quasi trust subject to the rights of the parties as established by their agreement. See *Casey* v. *Hurley*, 112 Conn. 536, 538, 152 A. 892; *Steinmetz* v. *Steinmetz*, 125 Conn. 663, 668, 7 A. 2d 915. It has been held that, whether an arrangement is a partnership or a joint adventure, it is the duty of the survivor to wind up its affairs. *In re Scott's Will*, 204 N. Y. S. 478, 496. Whether such a duty rested upon this defendant it is unnecessary to consider, since he in fact proceeded to sell the twenty cars and so converted them into cash. The question therefore is reduced to one relative to his accountability for the moneys so received.

Where, as in this case, there are no special circumstances or express contractual provisions, the general rule is that, subject to just allowances and deductions, a joint adventurer is accountable to his coadventurer's legal representatives for profits made by him through employment of the joint assets or in continuation of the joint enterprise after the death of the coadventurer. 30 Am. Jur. 706, § 55. The following are some of the many authorities which sustain this rule. *Senneff* v. *Healy*, 155 Iowa 82, 92, 135 N. W. 27; *Jepson* v. *Killian*,

151 Mass. 593, 594, 24 N. E. 856; *Kaufman* v. *Catzen,* 81 W. Va. 1, 10, 94 S. E. 388; note, 80 A. L. R. 12, 15; see *Patterson* v. *Kellogg,* 53 Conn. 38, 41, 22 A. 1096; *Lacon* v. *Davenport,* 16 Conn. 331, 342. The law is clear that the defendant is accountable for any profits realized upon the sale of the twenty cars.

As we have suggested, the decisive question is whether the plaintiff's failure to prove that the defendant realized any profits precludes her from obtaining a decree that he account. Where a partnership is dissolved by the death of a partner, the duty rests upon the survivor, after closing up the business, to account for the share of the deceased. Mechem, Partnership (2d Ed.) p. 343. And, as Mechem further points out (p. 403), where a partnership is terminated, unless there is an adjustment by agreement, "an accounting in court becomes necessary," and equity is the proper forum; the true theory is that "the right to an accounting follows because one is a partner." · *Underdown* v. *Underdown,* 270 Pa. 229, 113 A. 192; *Green* v. *Hart,* 27 Ky. L. R. 970, 87 S. W. 315; 68 C. J. S. 892, § 379; see also Mechem, op. cit., § 465; *Cruikshank* v. *M'Vicar,* 8 Beav. 106, 118, 50 Eng. Rep. 42. There is authority that an accounting between joint adventurers is governed by the same equitable principles as an accounting between partners. *Kornman* v. *Raskin,* 237 Ala. 490, 491, 187 So. 709; *Zingelmann* v. *Turner,* 235 Ala. 102, 103, 177 So. 627; *Cooperstein* v. *Shapiro,* 118 N. J. Eq. 337, 339, 179 A. 29; 48 C. J. S. 851, 808. Because the situation in this case is so closely analogous to that of an out-and-out partnership terminated by death of one of the partners, the foregoing authorities suggest strong reason for holding that the plaintiff is entitled to an accounting without having to prove that profits were realized by the defendant. This aside, there is direct authority that such a course should be followed where

there is a joint adventure as distinguished from a partnership. *Lutz* v. *Lustbader,* 229 App. Div. 832, 242 N. Y. S. 704; *Murphy* v. *Community Motion Picture Bureau,* 190 N. Y. S. 849, 850; 48 C. J. S. 841. Special cause for conforming to this rule exists under the circumstances of the instant case, where it was the defendant alone who negotiated the sales, paid whatever expense was involved in carrying them through, received the money for the cars sold, and kept sole account of the transactions consummated. By reason of these facts and of the fiduciary and confidential position of quasi trust which he thus occupied, the burden of showing whether any profit resulted from the sales, and if so how much, rested not upon the plaintiff but upon him, the defendant. See *McKibben* v. *Byers,* 138 Kan. 216, 220, 25 P. 2d 357.

The case of *Lesser* v. *Smith,* 115 Conn. 86, 160 A. 302, the sole authority relied upon by the trial court in support of its contrary conclusion, is clearly distinguishable upon its facts. In that action, the plaintiff alleged that there was a $600 balance due him from the defendant for profits from a pool which had been operated to deal in stocks and had been terminated. This was denied by the defendant's answer, and the court's conclusion was that the plaintiff had failed to sustain the burden of proof upon the issue so presented. The present case, instead of being in the nature of an action for money had and received, is for an accounting in equity for the proceeds of the twenty cars which, broadly speaking, became a trust res in the defendant's hands in consequence of the decedent's death. Further, in the *Lesser* case the plaintiff knew the specific amount claimed to be due him. Here, knowledge as to profits was exclusively in the defendant. The defendant adopted a basis of settlement which was manifestly inequitable: He deducted his sales and adver-

tising expense from the amount advanced by the decedent for the purchasing and conditioning of each car and paid the difference to the decedent's estate but refused participation in the profits. In other actions for an accounting, upon different facts, the burden of proving that the defendant realized profits may or may not rest upon the plaintiff. Under the circumstances which here existed, we are satisfied, for the reasons which we have stated, that the plaintiff did not have this burden.

There is error, the judgment is set aside and the case is remanded with direction to order an accounting and for further proceedings not inconsistent with this opinion.

In this opinion the other judges concurred.