RUDOLPH GREENHOUSE *v.* JACOB M. ZEMPSKY ET AL.

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued January 4—decided March 16, 1966

*David M. Reilly, Jr.,* for the appellant (plaintiff).

*Charles G. Albom,* for the appellees (defendants).

MURPHY, J. From January 1, 1955, to February 2, 1959, the plaintiff and Jacob M. Zempsky conducted a public accounting business in New Haven under the name of J. M. Zempsky and Company. They treated it as a partnership. It was terminated by Jacob on February 2, 1959, and thereafter he retained the plaintiff as an employee until December 31, 1960. In December, 1960, the plaintiff, after being notified that he was being discharged, sought, for the first time, an accounting of the firm's good will and submitted a list of the firm's customers whom he wanted to have turned over to him as his share of the business, but Jacob refused to do so. Thereafter, the plaintiff, with Jacob's consent, took with him certain clients, who represented to the firm an annual billing of $2800, as well as others whom the plaintiff had solicited away from the firm. The total billings thus obtained amounted to $4667.50 of the firm's annual business of $58,000. The plaintiff then instituted this action, in which he sought money damages, an accounting and an order directing an equitable division of the firm's clients and business. The trial court decided that, under the particular facts of this case, the plaintiff was not entitled to any relief other than that which he had

obtained in the solicitation of the firm's clients. The plaintiff has appealed. Neither party is entitled to any material correction in the finding.

Actually there are two defendants, Jacob and his son Burton, who was brought into the firm by his father in June, 1956. Burton's compensation came exclusively from his father's interest in the business. As Burton's entrance into the firm did not affect the arrangements under which the plaintiff was operating, we shall treat the matter as though Jacob was the sole defendant. A bit of the background of the relationship between the plaintiff and Jacob will serve to highlight the situation. Jacob married the plaintiff's sister in 1933. Jacob had then been conducting his own accounting business for eight years. He employed the plaintiff in 1933 and retained him as an employee until May, 1954, when Jacob discharged him. To keep peace in the family, Jacob, in the latter part of 1954, offered to take the plaintiff into the business as a partner and did so on January 1, 1955. The plaintiff had submitted proposed drafts of partnership terms, but they were unacceptable to Jacob and were never executed. Under the terms of the oral agreement, the plaintiff was to be a partner only to the extent that he would receive $7500 per year as compensation plus 25 percent of the net income over $27,500, while Jacob was to get $20,000 annually and 75 percent of the firm's profits over $27,500. All decisions were to be made by Jacob, who was the sole "boss." The plaintiff could only sign checks for emergency purposes or when authorized by Jacob. The arrangement was terminable at will, and no provision was made for the sharing of losses or for the disposition of the business upon dissolution.

On February 2, 1959, Jacob terminated the

arrangement with the plaintiff but continued the business with his son. At that time, Jacob gave the plaintiff a check for $2724.63, which represented the return of his capital contribution of $788.94, moneys due him and a bonus of $1000. While the plaintiff was retained by Jacob as an employee, Jacob repeatedly suggested that the plaintiff leave, and when he did not, Jacob discharged him in December, 1960, effective at the end of the month. During that month, the plaintiff was not permitted to service customers in the field but was restricted to work in the office.

As already indicated, the plaintiff successfully solicited customers producing $4667.50 annual business for the firm. The records for these accounts were turned over willingly to the plaintiff upon receipt of written directives from the customers. The court found that the annual gross business of the firm as of December 31, 1960, amounted to $58,000. It concluded, however, that, inasmuch as public accounting is a vocation dependent upon the personal relationship between the accountant and the customer, it would not be feasible to enter an order directing Jacob to turn over to the plaintiff any accounts other than those he had already obtained, because there was no way in which it could reasonably be determined that those accounts would give their business to the plaintiff. In this conclusion, the court was logical and correct.

The principal conclusion reached by the court was that the arrangement between the parties constituted a partnership. Jacob challenges this conclusion on the ground that the subordinate facts do not support it. The sharing of the profits as principals, which existed here, is one of the tests of the partnership relation. *Bucknam* v. *Barnum,* 15 Conn.

67, 73 (citing *Loomis* v. *Marshall,* 12 Conn. 70, and *Everitt* v. *Chapman,* 6 Conn. 347). There is also the offer by Jacob to take the plaintiff in with him as a partner and the acceptance of that offer. As it was the intent of the parties that their relationship was to be that of partners, that intent and the profit sharing are sufficient to sustain the court's conclusion. *Morgan* v. *Farrel,* 58 Conn. 413, 422, 20 A. 614. It is significant, however, that the plaintiff was not a general partner and therefore not a partner in the usual sense. His activities were severely limited, and he lacked the principal right of a partner to act as both principal and agent of the firm. *Morgan* v. *Farrel,* supra. He enjoyed the title but lacked any say in the management or operation of the business except as Jacob permitted.

Had the plaintiff sought an accounting when Jacob terminated the arrangement on February 2, 1959, or within a reasonable time thereafter, equity would have provided him with it. *Weidlich* v. *Weidlich,* 147 Conn. 160, 163, 157 A.2d 910; *Roberts* v. *Weiner,* 137 Conn. 668, 673, 81 A.2d 115. He did not do so. Instead, he accepted both employment as a weekly salaried employee of Jacob and the check which Jacob gave him on that day in settlement of his interest in the business. He made no claim for an accounting or for division of the firm's clients until twenty-three months later when Jacob discharged him as an employee. Considering the fact that the plaintiff took with him the accounts which he had brought into the firm and also obtained other accounts by solicitation, in all totaling business of around $4667.50, it does not appear that an inequitable result has been reached. The plaintiff had serviced and had had very close contact with at least 35 percent of the firm's clientele during the partner-

ship and while he was working as Jacob's employee. Had he been successful in persuading a good percentage of the firm's clients to transfer their business to him, this lawsuit would not have resulted. The court should not be expected, under the circumstances in this case, to do what his persuasion and salesmanship had failed to accomplish.

There is no error.

In this opinion KING, C. J., SHANNON and HOUSE, Js., concurred.

ALCORN, J. (concurring in the result). Although I agree that the plaintiff should not prevail, I would rest that result on the ground that no partnership existed. Despite the name given to his status by his brother-in-law in order "to keep peace in the family", the plaintiff was no more than an employee. He had no voice in the business. His receipt of a share of the profits was as compensation for services rendered and did not make him a partner. *Loomis* v. *Marshall,* 12 Conn. 69, 78; *Pond* v. *Cummins,* 50 Conn. 372, 375.

One can be either a general or a limited partner. The opinion admits that the plaintiff "was not a general partner and therefore not a partner in the usual sense". It ignores the fact that, by virtue of the "arrangement", he could not be a limited partner under the statute which was then applicable, § 6279 of the 1949 Revision of the General Statutes. In approving the trial court's conclusion that the "arrangement" was a partnership, the opinion strays from our established and sound definition of that relationship. *Morgan* v. *Farrel,* 58 Conn. 413, 421, 20 A. 614; *Active Market, Inc.* v. *Leighton,* 124 Conn. 500, 504, 200 A. 822.