## Mark Donahue *v.* Everett Barnes

Appellate Division of the Circuit Court

File No. CV 1-669-12404

Argued July 7—decided September 26, 1969

*Sidney Vogel,* of Norwalk, for the appellant (plaintiff).

*Martin L. Nigro,* of Greenwich, for the appellee (defendant).

DiCenzo, J.  There is no significant dispute about the facts in the case.  The plaintiff's complaint claimed (1) an accounting; (2) judgment for all profits found earned by the defendant; (3) $7500 damages; (4) punitive damages; and (5) an injunction.  A demurrer to the second claim for relief was sustained by the court *(Zarrilli, J.)* on January 12, 1967, and the plaintiff did not plead over.

On October 12, 1962, the plaintiff purchased from the defendant certain personal property together with the goodwill and trade of the defendant's clambake business, conducted under the trade name "Clambake King."  As part of the transaction the

parties agreed that the defendant would not engage in the same or a similar line of business, either directly or indirectly for himself or others, in the county of Fairfield in Connecticut, or in the county of Westchester in New York, or on Long Island, New York. The consideration paid by the plaintiff to the defendant was $1200. The plaintiff obtained information that the defendant had conducted clambakes in violation of their express agreement. The case was tried on the principal basis that the plaintiff was entitled to an accounting under § 52-401 of the General Statutes. The sole question for review before this appellate panel, as stated by the appellant, the plaintiff, in his brief, is whether, under the stated facts in this case, he is entitled to an accounting.

"The action of account as recognized by our statutes . . . is the common-law action of account somewhat amplified. . . . In such an action the court does not go into the items of the account but only pleas attacking the right of the plaintiff to have an accounting are permitted. . . . The judgment of the court in an action for an accounting is, if an issue is pending raising the right of the plaintiff to have it, that there be an accounting, which then is taken in accordance with the provisions of the statutes." *Kane v. Kane,* 120 Conn. 184, 188. Our statutes provide the procedures to be followed when a judgment or decree is rendered against a defendant for an accounting. See General Statutes §§ 52-401 to 52-405, "Actions for Accounting." "Where the right to an accounting is put in issue by the answer, the burden is on plaintiff to prove that he is entitled to the relief sought." 1 C.J.S. 677, Accounting, § 39.

To support an action of accounting, one of several conditions must exist. There must be a fiduciary relationship, or the existence of mutual and/or complicated accounts, or a need of discovery, or some

other special ground of equitable jurisdiction such as fraud. See 1 C.J.S. 646, Accounting, § 14 (a). Our Connecticut cases in actions for an accounting generally follow these principles. In *Roberts* v. *Weiner*, 137 Conn. 668, 673, an action brought by the plaintiff for an accounting by the defendant upon a joint adventure—for the purchase and sale of automobiles—which was terminated by the death of the plaintiff's decedent, the court held that plaintiff was entitled to an accounting, stating that by reason of the fiduciary and confidential position of quasi trust held by the defendant the burden was on him, and not the plaintiff, to show profits. In *Strang* v. *Witkowski*, 138 Conn. 94, an action brought by the plaintiff against four defendants to obtain an accounting of commissions claimed by him to have been earned pursuant to an oral contract with the individual defendants, a judgment for the plaintiff ordering an accounting was affirmed. In that case, the trial court found that the plaintiff had obtained customers for the business of the defendants totaling 121 invoices for nine different companies. In *Stanley* v. *M. H. Rhodes, Inc.*, 140 Conn. 689, the plaintiff brought an action against the defendant seeking an accounting for sums claimed to be due him for services rendered to the defendant as agent, salesman and distributor of parking meters. The court said (p. 693) : "The relationship between the parties was one which covered a long period of time and a large number of separate transactions [there were 183 exhibits], all of which were carried out in connection with several different agreements, both written and oral. To arrive at a complete and just determination of the amount due from the defendant to the plaintiff, it was necessary that the court inquire into matters that were not specifically alleged but which were so interwoven that a full and complete accounting would require them to be taken into

consideration. . . . The judgment for an account-
ing opened the door to an inquiry into the facts and
circumstances as wide as might be necessary to de-
termine the sum due by reason of the agency upon
the existence of which that judgment was predi-
cated."

We have been unable to find a Connecticut case
which, with facts in any way comparable to those
found in the instant case, would support the plain-
tiff's position, nor has the plaintiff offered any such
Connecticut authority. There is nothing in the trial
court's finding of subordinate facts or in its con-
clusions which meets the legal requirements for an
accounting. The plaintiff relies heavily on, and
strongly urges upon us, *Dairy Queen, Inc.* v. *Wood,*
369 U.S. 469. A study of that case discloses the fol-
lowing. The complaint sought (1) a temporary in-
junction and a permanent injunction against use of
the trademark "Dairy Queen," (2) an accounting to
determine the amount due and a judgment for that
amount, and (3) an injunction to prevent further
collections pending the accounting. The answer
denied the breach of contract and alleged laches and
violations of the antitrust laws. The defendant
claimed a jury trial. The United States District
Court for the eastern district of Pennsylvania
granted a motion to strike the demand for a jury
trial on the ground that the action was "purely
equitable" or, if it was not purely equitable, that
whatever legal issues were raised were "incidental"
to the equitable issues, and that in either case no
right to trial by jury existed. The defendant sought
mandamus in the Court of Appeals to compel the
district judge to vacate his order. When that court
denied his request without opinion, the United
States Supreme Court granted certiorari because
the action of the Court of Appeals seemed incon-
sistent with constitutional protections of the im-

portant right to trial by jury. The Supreme Court held that the request for a money judgment was unquestionably legal, no matter how the complaint was framed, and that as an action for damages upon a charge of trademark infringement it was no less subject to cognizance by a court of law. Then the court went on to say (pp. 477–78): "The respondent's contention that this money claim is 'purely equitable' is based primarily upon the fact that their complaint is cast in terms of an 'accounting' rather than in terms of an action for 'debt' or 'damages'. . . . The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law. Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." The court concluded that this was not an equitable matter and therefore reversed the lower courts on the right to a jury trial. If anything, *Dairy Queen, Inc.* v. *Wood, supra,* is authority to support the contention of the defendant in the instant case.

Both the plaintiff and the defendant concede that the legality of the restrictive covenant was not an issue. The plaintiff described the trial court's comments on the legality of the restrictive covenant as "entirely by way of gratuitous consideration," since the defense of illegality was not pleaded, and the defendant described the trial court's determination of illegality as "on its own motion." Under these circumstances, we do not consider this aspect of the case.

There is no error.

In this opinion KOSICKI and JACOBS, Js., concurred.