[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action on a contract. The complaint, as ultimately revised, is in two counts; one against the defendants, The Real Estate Exchange, Inc. d/b/a and SJM Real Estate, Inc., and Steven Miller brought by the plaintiff to recover his claimed share of certain real estate commissions under a certain agreement and for an accounting and the other against the defendant, Steven Miller on his alleged personal guarantee seeking that same relief.
On March 12, 1986, plaintiff entered into an agreement with the defendant, The Real Estate Exchange, Inc. and defendant, Steven Miller. Articles of Incorporation for defendant The Real Estate Exchange, Inc. had been executed on March 5, 1986 and were shortly thereafter filed with the Connecticut Secretary of State.
On April 24, 1986, a Certificate of Authority was issued to SJM Real Estate, Inc. d/b/a Steven Miller Real Estate, ("SJM") a Delaware Corporation, qualifying SJM to transact business in the State of Connecticut. Thereafter, by letter dated CT Page 1146 June 5, 1986, SJM adopted the terms of the agreement dated March 12, 1986.
The terms of the agreement from the beginning were the result of face to face bargaining and negotiation between the defendant, Steven Miller and the plaintiff, Robert Troy. The plaintiff specifically required the signature of Steven Miller individually purposely intending he would obtain the personal liability of Miller. Steven Miller signed the agreement individually intending thereby to extend his personal liability. He also signed as President of The Real Estate Exchange, intending thereby to bind the corporation as well.
"Broker" was defined in the agreement as Robert Troy, "Firm" was defined as The Real Estate Exchange, Inc. [now defendant, SJM,] and "Miller" was defined as Steven Miller. In return for Broker agreeing to act as "the licensed real estate broker of record" for all employees and independent contractors of Firm (SJM), in Section 1.1 of the agreement, the defendants agreed to pay the plaintiff, Troy, (5) percent of "Firm's share" of its real estate commissions for all real estate for which a sales contract was executed and was brokered or cobrokered by the firm, its employees or independant contractors[1]
during an original term of two (2) Years.
The defendant, SJM made three separate initial partial payments.[2] A dispute over the way in which the 5% commission was calculated arose almost at the outset; the plaintiff complained about the amounts of the payments but did not terminate the agreement and allowed it to run a two year course and instituted this action.
This court finds that in the real estate business it is common that commissions earned are split or divided in portions among persons or classes of persons who in any given case combine in the real estate transaction. These persons or classes, could, in any given case be entitled to a portion of the total commission earned. These persons or classes could include independent agents or agent who are employees of the firm — in this case, including Miller himself, other independent contractors and/or co-brokers, all, in any combination. The defendant, SJM, his admitted it owes the plaintiff the sum of $9,088.14. The plaintiff claims the term "Firm's share" is ambiguous and must be interpreted according to rules of contract construction. He claims his damages amount to $30,504.80.
The principal issue, in the case, the plaintiff suggests, is the interpretation of the words "Firm's share" set forth in Section 1.4 Payment in the Agreement. CT Page 1147
The plaintiff contends that the 5% of the Firm's
share is simply to be calculated by multiplying 5% times the "Gross" Commissions, i.e. 100% of the commission earned during the relevant period in every transaction without deduction for any portion paid to any other person sharing therein in a split or divided commission situation. Defendants claim the Firm's share is to be calculated by multiplying 5% times the "Net" commissions earned from any given sale. Defendant claims, and this court agrees, that the "Firm's share" is that portion of the total commission from any given real estate transaction less portions of the total commission which were paid to any co-broker or other participating independent agent or agents, including Steven Miller. The result of such a calculation is the "net" commission or the "Firm's share". In other words, the firm's share is that portion of the total commission less the portions paid, as commissions, to entitled co-brokers and or other participating independent agents who together share in the division of the total commission earned. In this case this sum can be computed by utilizing the entries shown on (Plaintiff's Exhibit 3) a copy of an affidavit filed by the defendants initially on December 30, 1988, in connection with the defendant's separate Motions for Summary Judgment. In the trial of this case the plaintiff introduced in evidence a significant portion of the affidavit of debt which, in the main related to the subject of commissions. Commissions were treated in five separate columns. One column contained the address of the property sold. The second was entitled Gross Receivables. The third was captioned "Advert". The fourth was titled "SJM Comm. Agents and the last "Net-Office". There does not appear to be a dispute that the separate amounts in the column "Gross Receivables" is a correct figure and represents the total commission which was paid in each transaction and that the total of all the commissions which were paid shown on the affidavit is $668,859.34. The "Net Office" figures, the defendants claim, are the net to SJM after, from the gross there was a deduction for those amounts paid out to others by way of portions or shares of the commissions earned. These amounts are shown in the column titled S.J.M. Comm. Agents. This court finds that these figures in the "Net office" column however, are incorrect but only as they include a deduction for advertising expenses or other expenses as shown in the Column "Advert" that are not properly deductible in the equation for finding net commissions as being the equal of Gross Commissions less commissions paid out in portions or shares to others.
The plaintiff claims the right to recover $33,442.97 which is 5% of the gross commissions for real estate sales contracts during the term of the agreement in the amount of $668,859.35. This figure of $668,859.35 is reached by the CT Page 1148 plaintiff and is accepted as being accurate and as having been admitted by the defendants and is the added total of all of the figures listed as gross commissions received or gross commissions on Plaintiff's Exhibit 3 (Affidavit of Debt). This court does not agree with the plaintiff that he is entitled to 5% of $668,859.35.
The term "Firm's Share" is not ambiguous. Resort to the rules of contract interpretation, particularly, that the contract should be construed against the party who drew it is not necessary. "Ambiguous" can be defined as unclear or uncertain. Lake Garda Improvement Association v. Battistoni,160 Conn. 503, 511. "There is no room for construction where the terms of a writing are plain and unambiguous, and it is to be given effect according to its language." Collins v. Sears Roebuck Co., 164 Conn. 369, 374. "Share" is defined as "1. A part or portion belonging to, distributed to, contributed by, or owed by a person or a group. . . ." The American Heritage Dictionary of the English Language, New College Edition. The Firm is described in the agreement as The Real Estate Exchange, Inc. (now SJM). The Firm's share is S.J.M.'s portion of the commission. Five (5) percent of the Firm's share (i.e. Net Office plus Advert) is 5% times $296,637.46 plus $21,513.08) [Total $318,150.54] which is $15,907.53.
The defendant, Steven Miller, claims he is not personally liable. The plaintiff testified that he purposely sought the personal liability of Steven Miller and that he received that promise. Steven Miller documented the fact of his promise of individual liability by fixing his name separately both as president of the corporation and also on a line provided, without any limitation of his responsibility made to appear on the face of the instrument executed by him. Plaintiff claims that Steven Miller is a guarantor of the obligations of the corporation. This court agrees. Defendant Steven Miller claims his individual signature signified, on the basis of the Agreement language, only his obligation to agree to act as the real estate broker of record for all employees and independent contractors of the firm and his agreement to be a signatory on the Firm's escrow account and he claims in those regards he fulfilled his personal obligation under the agreement. This court does not agree with that claim.
Plaintiff's Exhibit 3 (Affidavit of Debt) first made its appearance in this case on or about December 30, 1988, when it was filed by the then attorney for the defendants.[4] as an affidavit submitted by the defendants pursuant to Motions for Summary Judgment. It seems clear that the plaintiff, as early on as February 15, 1989, knew that the defendant's claim rested on their contention that their obligation was limited to 5% of CT Page 1149 "net office" as reported in the affidavit. The plaintiff, in his post trial brief, writes, as follows.
 . . . as to the question of the accounting sought by the Plaintiff in his complaint, the Plaintiff is satisfied and has been able to verify through independent sources that the Defendant, SJM Real Estate, Inc., did, in fact, receive gross commissions for real estate sales contracts during the term of the Agreement in the amount of $668,859.35, as admitted by the Defendants in the Affidavit of Debt in evidence. This figure is reached by adding the figures listed on the Affidavit of Debt as gross received or gross commissions. Therefore, should the Court determine that Plaintiff's compensation is based on the gross commissions received, Plaintiff's judgment should be in the amount of $33,442.97 (5% of $668,859.35) less payments made by Defendants of $2,938.17 for a total due Plaintiff of $30,504.80.
 However, should the court determine that Plaintiff's compensation should be based on the net amount received by the defendants, Plaintiff would press his claim for an accounting because Plaintiff has no way of verifying the expense figures produced by the Defendants in said Affidavit. Plaintiff cannot verify the amount of commission paid to listing and/or selling agents without an actual examination of Defendants' books and records, cancelled checks, etc. There is no independent means of verifying his figures, except through such an accounting, as requested. Therefore, Plaintiff would ask the Court to order such an accounting.
"Although an accounting is also a legal remedy, it `has become to a great extent equitable'; . . . particularly where it is used as a preliminary step in establishing other rights." Dick v. Dick, 167 Conn. 210, 222, 355 A.2d 110 (1974). "To support an action of accounting, one of several conditions must exist. There must be a fiduciary relationship, or the existence of mutual and/or complicated accounts, or a need of discovery, or some other special ground of equitable jurisdiction such as fraud." Donahue v. Barnes, 6 Conn. Cir. Ct. 64, CT Page 1150 65-66, 265 A.2d 87 (1969)." C S Research Corporation v. Holton Co., 36 C.S. 619, 621. (Emphasis added.)
Now, after presenting his evidence in a trial, the plaintiff makes a claim that he is entitled to a decree of accounting in the event he fails to persuade the court he is entitled to 5% of the Gross Commissions. It is true he has sought relief by way of an accounting from the outset of this case as is evidenced by the original complaint.
The plaintiff, in seeking an accounting, it would appear, does not claim the existence of a fiduciary relationship and this courts finds one does not exist. The plaintiff, it would appear, does not claim he is entitled to an accounting because of the existence of mutual and/or complicated accounts. This court finds, in this case, they do not exist. The plaintiff, it would appear, does not, in the truest sense, seek discovery but seeks, rather to initiate some sort of investigation to test and evaluate material known to him for a long time. This truly is not discovery.
The plaintiff has had the capacity to verify through independent sources that the defendant, S.J.M., received gross commissions in the amount of $668,859.35 as shown in the Affidavit of Debt (Plaintiff's Exhibit 3) but claims, apparently, an inability to do the same with the "net office" figure as shown on that same Plaintiff's exhibit. Insofar as to a claim for needed discovery, this court finds the request here does not fit the rule allowing an account for such reason. Our rule provisions providing for discovery seem to this court to have offered ample availability to the plaintiff to inquire and investigate as to the accuracy and truthfulness of the "net office" figures. See A.L.R.2d 1304 et seq. (More specifically pages 1312, 1313, 1314, 1315 Secs. 1 thru 5).
The plaintiff is entitled to 5% of [$296,637.46 (Net Office) plus $21,513.08 (Advert) or a total of $318,150.54] which equals $15,907.53, less $2,938.17 which the defendants paid to the plaintiff which leaves $12,969.36. He is also entitled to interest from the date this action was brought at 10%, which this court finds to be reasonable. See Conn. Gen. Stat. sec. 37-3a; H.B. Toms Tree Surgery, Inc. v. Brant, 343, 347, 348. Interest from the day this action was brought i.e. September 29, 1987 to date on $12,969.36 at 10% is equivalent to 1,032 days x $3.60 per day which equals $3,715.20.
Judgment may enter for the plaintiff to recover from all the defendants Steven J. Miller, Inc. (SJM) and Steven Miller the amount of $16,684.56. CT Page 1151
LEONARD W. DORSEY SENIOR JUDGE